James, J.
This action is brought to remove Clute from the office of superintendent of the poor of Schenectady, and to put Furman in possession.
It is claimed that under and by virtue of the Acts of 1829 (Laws of 1829, ch. 352), and 1853 {Laws of 1853,. ch. 80), and the city charter (Laws of 1862, ch. 385, tit. 4, § 8),. Clute, by reason of his being supervisor of the fifth ward of said city, was ineligible to the office of superintendent; and that, being ineligible, the • votes cast for him were illegal and not to be counted, and that the relator having the highest number of votes cast, was entitled to the office and its emoluments.
Clute’s ineligibility must be determined from his status at the time of the election, so that his subsequent resignation of the office of supervisor will not avail.
The statute creating this disqualification, prohibits the election of a supervisor as superintendent, &c.
The supervisor of wards in the city of Schenectady, in the statute by which such office is created, are placed subject to the same disabilities as supervisors of towns (Act of' 1862, ch. 385, tit. 4, § 8).
The office of county superintendent of the poor was created by the act of 1824.
The substance of that act was, in 1828, incorporated into the Revised Statutes and made a part thereof, to take effect January 1, 1830. Superintendents were then appointed, and their compensations provided for by the boards of supervisors.
It was soon perceived that there was great impropriety in permitting the same person to hold these two offices; so that in 1829, the legislature provided by *407 chapter 352, that no supervisor of any town, or county treasurer, should be appointed superintendent of the poor of any county. But this act, though passed before the Revised Statutes took effect, was never by legislative enactment, declared a part of the Revised Statutes. It has been inserted in the several editions of such laws up to and including the fourth edition, where it is placed and numbered as section 22 in title 1, chapter 20, part 1.
In 1847, the legislature, by chapter 498, made the office of superintendent elective ; and, in 1853, chapter 80 was enacted, which declared that “section 22 of chapter 20, title 1, part 1 of the Revised Statutes, fourth edition,” was amended so as to read : “No supervisor of any town or county treasurer, shall be elected or appointed to hold the office of superintennent of the poor of any county.....in any county of this State; ” intending to amend the act of 1829, and designating a section containing that act, but denominating it as of the Revised Statutes.
Original section 22 of the Revised Statutes treated of matters in bastardy, whilst said section 22 of the fourth edition treated of a subject to which the proposed amendment had application ; in fact, the act of 1829.
The legislative intent, therefore, is too clear to be disregarded, and the act of 1853 must be held as operating to so amend the act of 1829, as to make the latter applicable in terms to persons elected, as well as appointed. The amendment is, however, of little consequence.
The disqualification was against the union of the two offices in the same person, without regard to the mode of selection ; and a change, from appointment to election, did not relieve the office from the statutory restriction.
It was also urged that the statutes of 1829 and *408 1853 were unconstitutional: First, because the right of the elector to select and vote for a candidate from among the body of citizen electors was restricted. Second, because the right of eligibility of office is denied to the defendant. Third, because no member of the State can be disfranchised or deprived of any of the rights and privileges secured to any citizen, unless by the law of the land or judgment of his peers.
There ie no force in any of these reasons, because not applicable to the case. The acts complained of restrict no elector in his vote; deprive no citizen of any right or privilege secured to him ; nor disfranchise any one. The offices of supervisors and superintendent were created by statute, and the legislature had the power to declare the holding of one incompatible with holding the other. The inhibition is not against the office.
1 am, therefore, of the opinion that both of said acts are constitutional; that a supervisor is disqualified from holding the office of superintendent of the poor, and that the defendant, by reason of his being a supervisor when voted for as superintendent, though receiving a majority of the votes cast, was not legally elected, and cannot, by virtue thereof, take and hold such office.
The next quession is, the right of the relator to the office.
It is shown that he had the next highest number of votes cast. The point turns upon the question whether the votes cast for Clute are, or are not, to be thrown away. In England, it is settled that votes cast for a candidate known to the elector to be ineligible, are thrown away, and that the candidate having the greatest number of the votes left, or cast for eligible persons, is duly elected. Most of the English cases arose in elections by organized or corporate bodies, and therefore it has been held, that votes cast for a dis *409 qualified person might be regarded as blanks, but counted, if necessary, for the purpose of showing a quorum present.
Ia this country, the election of disqualified persons is absolutely void; and in cases where a plurality elects, votes given for an ineligible candidate after notice to the electors of that fact, are thrown out, and the candidate having the next highest vote, elected; but not so where a majority of the votes are required to elect.
In this State a plurality elects; in this case, the candidate having the highest number of votes was ineligible, and cannot take the office ; therefore the only question is, did the electors have notice of such disqualification, or were the facts such that they were bound to take notice \ If either, the votes for the ineligible candidate are to be thrown out, and the relator to take the office ; otherwise the election was a failure, and the office is vacant.
In elections by corporate bodies, there is no diffi-. culty of showing notice if it was given; but in popular elections, embracing an extended territory, it will ever be difficult, if not impossible, to show notice, or to show facts which the electors were bound to know from which notice can be presumed. It will not do to say, a notice to a part is notice to all, or that knowledge in part is knowledge in all; it cannot be inferred that because a certain number of electors knew a candidate disqualified, that all who voted for him also knew it, nor can they be presumed to have had notice.
Such a rule would operate to disfranchise those honestly voting for such candidate.
In this case, it is not claimed that the body of the electors had notice of the respondent’s ineligibility, or that the facts were such they were bound to know. But it is insisted that the electors of the fifth ward were bound to know who was their supervisor; and *410 that if the votes cast for the defendant in that ward are thrown out, the relator has a majority of the remainder and is elected. If the claim as to knowledge is conceded, the result insisted upon would not follow, for the reasons hereinbefore suggested. The votes of one locality cannot be separated from the other votes of the district. The whole vote must be taken together, and as such, stand or fall.
I am, therefore, of the opinion that, notwithstanding the respondent took no title to the office, and the relator had the greatest number of votes cast for an eligible candidate, yet, for want of notice to the electors of the respondent’s ineligibility, or the existence of such facts as the electors were bound to know respecting such ineligibility, from which notice might be presumed, the votes cast for the respondent cannot be thrown out, and hence the election was a failure, and the office vacant.
Judgment of ouster.